DONALD M. MAZZOTTI, d/b/a Notary Public Agency, Plaintiff-Appellant, *v.* JAMES EDGAR, Secretary of State, Defendant-Appellee.

Fourth District   No. 4—83—0563

Opinion filed May 7, 1984.

John H. Wilhelm, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

The principal issue presented for review is whether the following portion of section 16 of the Illinois Notary Public Act constitutes an impermissible restraint on commercial speech in violation of the first amendment (U.S. Const., amend. I):

"[No person shall] solicit any applicant renewing a Notary's Commission and offer to provide a Surety Bond more than 30 days in advance of the expiration of such Commission." (Ill.

Rev. Stat. 1981, ch. 99, par. 16.)

We conclude that section 16 does not violate the first amendment.

On April 6, 1983, plaintiff, Donald M. Mazzotti, d/b/a Notary Public Agency, filed a two-count complaint in the circuit court of Sangamon County against defendant, James Edgar, Secretary of State, State of Illinois. The complaint alleged that (1) plaintiff was doing business as Notary Public Agency in Sangamon County; (2) defendant had a statutory duty (Ill. Rev. Stat. 1981, ch. 124, par. 5) to give plaintiff a list containing the names of notaries public commissioned by defendant pursuant to the Illinois Notary Public Act (INPA) (Ill. Rev. Stat. 1981, ch. 99, par. 1 *et seq.*); (3) since March 28, 1983, defendant had refused to perform this statutory duty; (4) plaintiff had complied with all of the conditions precedent to the performance of defendant's statutory duty; and (5) defendant's refusal to perform this statutory duty had injured plaintiff because he had been unable to "solicit certain surety bond business relating to notaries public that he [had] solicited for a long time past."

Count I requested that the trial court enter a judgment of *mandamus* in favor of plaintiff, commanding defendant to give plaintiff certain lists of persons commissioned by defendant as notaries public (notaries lists). Count II requested that the trial court enter a preliminary injunction directing defendant to furnish plaintiff with copies of the notaries lists.

At the conclusion of a hearing held on April 14, 1983, the trial court denied plaintiff's motion for a preliminary injunction.

In a counterclaim filed on April 26, 1983, defendant alleged that plaintiff's practice of soliciting notaries to provide surety bonds more than 30 days prior to the expiration of a notary's commission constituted a violation of section 16 of the INPA. The counterclaim requested that the trial court enter an order permanently enjoining plaintiff from issuing such solicitations more than 30 days in advance of the expiration of a notary's commission.

In his reply to defendant's counterclaim, plaintiff admitted that he solicited notaries more than 30 days prior to the expiration of their commissions, but (1) denied that this conduct violated section 16, and (2) stated that section 16 was an impermissible restraint on commercial speech.

A hearing on plaintiff's complaint for *mandamus* and defendant's counterclaim for a permanent injunction was held on May 6, 1983. At the outset of this hearing, the parties stipulated that defendant had stated that he would not give plaintiff unlimited access to the notaries lists and that such lists would only be made available to plaintiff 30

days prior to the expiration of a notary's commission.

In an order entered on July 25, 1983, the trial court determined that (1) defendant had no statutory duty to refuse to give notaries lists to plaintiff based upon defendant's perception that plaintiff would use the information illegally (Ill. Rev. Stat. 1981, ch. 124, par. 5); (2) plaintiff's practice of mailing solicitations more than 30 days prior to the expiration of notaries commissions constituted a violation of section 16 of the INPA; (3) section 16 is related to a substantial governmental interest, is not overbroad, and is not an unnecessary burden on commercial free speech; and (4) section 18 of the INPA provides that after a showing of a violation of section 16 the trial court has the power to issue a permanent injunction against the violation. In the order, the trial court (1) issued a writ of *mandamus* against defendant commanding him to give notaries lists to plaintiff, and (2) permanently enjoined plaintiff and his agents from issuing solicitations to renew commissions or to provide surety bonds more than 30 days in advance of the expiration of the commission of the notary so solicited.

Only that portion of the trial court's order which permanently enjoined plaintiff from issuing solicitations more than 30 days prior to the expiration of notaries' commissions has been appealed. Plaintiff asserts that (1) section 16 unconstitutionally restricts commercial speech, and (2) his solicitations qualify for the so-called "letterhead exemption" contained in section 16.

In a series of cases decided in the mid-1970's, the United States Supreme Court determined that commercial speech was entitled to a certain degree of first amendment protection. See *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817; *Bigelow v. Virginia* (1975), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222; *Pittsburgh Press Co. v. Pittsburgh Com.* (1973), 413 U.S. 376, 37 L. Ed. 2d 669, 93 S. Ct. 2553.

In *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343, an electrical utility brought suit to challenge the constitutionality of a New York Public Service Commission regulation which completely banned promotional advertising by the utility. The commission alleged that the purpose of this ban was to further the national policy of conserving energy. The Supreme Court, in determining that this regulation was unconstitutional, set forth the following method of analysis for commercial speech cases:

"The First Amendment's concern for commercial speech is

based on the informational function of advertising [citation]. Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it [citations], or commercial speech related to illegal activity [citation].

If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." 447 U.S. 557, 563-64, 65 L. Ed. 2d 341, 349-50, 100 S. Ct. 2343, 2350.

In considering *Central Hudson Gas* with reference to the instant case, we must address the question of whether plaintiff's solicitations are protected by the first amendment. In order to be protected, the solicitations must concern lawful activity and not be misleading. Without question, a solicitation to renew a notary commission concerns a lawful activity.

As to whether the solicitations are misleading, we note that plaintiff, a licensed insurance broker, testified at trial concerning his business practices as follows. In order to solicit surety bonds, errors and omissions insurance policies, and other insurance from notaries public, plaintiff would obtain lists containing the names of notaries public whose commissions were about to expire from defendant's Index Division. Plaintiff would then send a solicitation form to these notaries.

In this form, plaintiff offered to renew the notary's commission for the notary if he/she would (1) complete the bond form contained on the reverse side of the form, (2) write a $5 check to the Secretary of State and a $10 check to Notary Public Agency, and (3) return the completed form and both checks to Notary Public Agency. This form also provides in part:

"Upon receipt of these three items we will HAND CARRY to

Secretary of State's office to avoid any mistakes or confusion that would delay the renewal of your commission. THIS IS ALL THAT WILL BE REQUIRED TO RENEW YOUR COMMISSION."

Plaintiff also testified that after receiving the checks and the completed form he (1) checks to see that the surety officer's signature is affixed with a seal and that the oath is filled out exactly as the name appears on the notary seal, (2) acknowledges receipt of the forms with a postcard, asks to be kept current on changes of address, and informs the State of such changes, (3) hand carries the forms to defendant's office, and (4) checks the daily list of commissions to verify that the commission is not being "skipped over" which would result in the expiration of a notary's commission. Plaintiff admitted on cross-examination that (1) a notary who uses personal sureties instead of a surety bond pays only a $5 fee to defendant, and (2) he had received approximately 11 complaints from notaries concerning his services.

Defendant contends that plaintiff's solicitations are misleading. In support of this contention defendant notes that at trial John Hofferkamp, director of the Secretary of State's Index Division, identified (1) a group of 13 letters written by defendant to notary applicants who, having already responded to plaintiff's solicitation, had nevertheless completed and returned the notary application which was subsequently sent by defendant, and (2) a group of 11 written complaints submitted by notaries who had been confused by plaintiff's solicitations. In addition to the written complaints, Hofferkamp testified that he had received "hundreds" of telephone complaints concerning plaintiff's solicitations.

We recognize that a close question exists as to whether plaintiff's solicitations are misleading. On one hand, the record indicates that several written complaints and "hundreds" of telephone complaints have been submitted concerning plaintiff's solicitations.

On the other hand, we note that plaintiff's solicitation contains no untruths. In addition, section 16 requires every solicitation to set forth "in bold face type not less then 1/4 inch in height" the following:

"THE LAW PRESCRIBES EITHER PERSONAL SURETIES OR A SURETY BOND. WHERE PERSONAL SURETIES ARE APPROVED BY THE SECRETARY OF STATE, NO SURETY BOND IS REQUIRED.

WE ARE NOT ASSOCIATED WITH ANY STATE OR LOCAL GOVERNMENTAL AGENCY." (Ill. Rev. Stat. 1981, ch. 99, par. 16.)

Plaintiff's solicitation form contains this mandatory statutory lan-

guage.

■ However, we need not decide whether plaintiff's solicitations are misleading because we conclude that the section 16 proscription (1) directly advances a substantial governmental interest, and (2) is not more extensive than is necessary to serve that interest. *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343.

As to the asserted governmental interest, we note that John Hofferkamp testified concerning the purpose of the section 16 proscription as follows. He noted that (1) defendant has traditionally informed notaries that their commissions were about to expire by mailing renewal forms to them 60 days prior to the expiration date along with a letter that informs them that they may use personal sureties or that they may purchase a bond, and (2) prior to 1969 the INPA did not prohibit persons from soliciting notaries public bonds more than 30 days prior to the expiration of the commission. However, in the fall of 1968 a firm began to solicit notaries far in advance of their expiration date. This practice caused "much confusion" because the notaries received the solicitations before they had received the renewal forms from defendant. Hofferkamp testified that the purpose of section 16 was to avoid confusion by allowing notaries 30 days between the time defendant informed them of the expiration of their commission (60 days prior to the actual expiration date) and the time that persons could begin soliciting notary public bonds from them (30 days prior to the actual expiration date).

Plaintiff contends that the governmental interest of avoiding confusion by allowing notaries to receive defendant's renewal forms before receiving solicitations from notary public bond firms is not "substantial" for purposes of the *Central Hudson Gas* analysis because the solicitations create only a "small measure of confusion." We disagree. The record in this case contains evidence of several written complaints and "hundreds" of telephone complaints submitted by notaries who had been confused by plaintiff's solicitations.

Accordingly, we conclude that (1) there is a substantial governmental interest in preventing the dissemination of confusing solicitations to notaries, and (2) this governmental interest is directly advanced by prohibiting solicitations until after defendant has informed notaries that their commissions are about to expire.

Plaintiff also argues that the governmental interest in this case could be served as well by a more limited restriction on commercial speech. For example, plaintiff suggests that defendant could (1) place some limited restriction on the information conveyed, rather than the

time in which the information is conveyed, or (2) require a solicitor to mark his envelopes with a notation that only insurance materials are included in the solicitation. We disagree.

As to plaintiff's first suggestion, we note that (1) such a restriction would be content-based rather than a regulation of the time, place, or manner of the speech, and (2) content-based restrictions do not withstand constitutional inspection as readily as time, place, or manner restrictions. *Linmark Associates, Inc. v. Township of Willingboro* (1977), 431 U.S. 85, 52 L. Ed. 2d 155, 97 S. Ct. 1614; *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817.

As to the second suggestion, we note that plaintiff's solicitations contained the mandatory statutory language which warned that plaintiff's firm was not associated with any governmental agency and stated that defendant does not require a surety bond. Despite these disclosures, the evidence indicates that many notaries were confused. Moreover, one notary public testified that although she knew the difference between a personal surety and a commercial surety bond, she completed the solicitation form sent to her by plaintiff because she was confused by the "official-looking" nature of the form.

We conclude that the section 16 proscription is not more extensive than is necessary to serve the governmental interest of avoiding confusion by allowing notaries to receive defendant's renewal form before receiving a solicitation from a notary public bond firm.

Accordingly, even if plaintiff's solicitations are not misleading, the trial court could have properly enjoined plaintiff from sending solicitations more than 30 days in advance of the expiration of the notaries' commissions because this proscription does not constitute an impermissible restraint on commercial speech.

■ Plaintiff points out that section 16 provides in part:

"Nothing contained in this Section shall apply to a letterhead proper, or general listings or advertising of a general nature, or general publications of any duly licensed insurance broker or agent or company which merely lists surety bonds along with other bonds or policies." Ill. Rev. Stat. 1981, ch. 99, par. 16.

Plaintiff maintains that his solicitations qualify for this so-called "letterhead exemption." Plaintiff notes that (1) the solicitations were printed on his business letterhead, and (2) the solicitation stated:

"NOTE: In addition to the above service and as duly licensed Insurance Broker we can also offer you our popular four (4) years Errors and Omissions policy that provides $5,000 coverage for only $20 for the four (4) years. We offer other insur-

ance coverage as well."

We believe that the "letterhead exemption" was intended to permit other types of commercial solicitation and correspondence with notaries at any time, even if a company's letterhead made an incidental reference to the availability of notary bonds. For example, a firm could mail letterhead advertising to notaries offering to sell them life insurance without violating section 16. Here, plaintiff admitted on cross-examination that (1) the form language offering the other types of insurance appeared in print approximately one-fourth the size of the print preceding it, and (2) approximately 90% of his business consists of selling surety bonds to notaries.

We conclude that the section 16 "letterhead exemption" does not apply where, as here, the thrust of an advertisement is the offer either to renew a notary commission or to provide a surety bond for the notary commission.

For the reasons stated herein, we affirm.

Affirmed.

TRAPP and MILLER, JJ., concur.